United States District Court
Eastern District of Texas
Sherman Division

| | |
|---|---|
| Jordan Kahn Music Company, L.L.C., Scott Swiecki a/k/a Scott Michaels, and Scott Michaels Entertainment LLC,<br><br>    *Plaintiffs*<br><br>v.<br><br>Dean "Deno" Taglioli, Emerald City Band, Inc., and Emerald City Management, L.L.C.,<br><br>    *Defendants* | Civil Action No. _____ |

## Plaintiffs' Original Complaint

Plaintiffs Jordan Kahn Music Company, L.L.C. ("JKMC"), Scott Swiecki a/k/a Scott Michaels ("Michaels"), and Scott Michaels Entertainment LLC ("SME") (collectively, the "Plaintiffs") file this Original Complaint against Defendants Dean "Deno" Taglioli ("Taglioli"), Emerald City Band, Inc. ("ECB"), and Emerald City Management, L.L.C. ("ECM") (together with ECB, the "Emerald Entities" and collectively with Taglioli, the "Defendants") for trademark infringement, unfair competition, unjust enrichment, declaratory judgment, fraud, promissory estoppel, and tortious interference. Plaintiffs state the following in support:

## STATEMENT OF THE CASE

JKMC is well-known in the music and entertainment industry throughout the United States, including in the State of Texas and this District. Defendants are competitors of JKMC and known bullies in the industry. Defendants have a knack for committing string-along fraud against former employees and infringing on their trademarks. A few years ago, Taglioli strung along Jordan Kahn ("Kahn"),[1] and more recently, Taglioli has repeated his pattern of making empty promises of leadership roles by fraudulently stringing Michaels along—only to terminate his employment in the midst of a global pandemic and leave him without any wages to support his family, including his newborn son.

For years, Taglioli promised a bright future for Michaels at the Emerald Entities. Among other things, he promised him a CEO position and to dissolve non-compete agreements pertaining to Michaels. Despite conducting negotiations over the CEO position for several months, Taglioli pulled a bait-and-switch and offered Michaels a COO position instead. Then, out of nowhere, he terminated Michaels' employment without reason—during a global pandemic—and coerced him to sign a purported addendum to prior agreements to prohibit Michaels from working in connection with any company affiliated with Kahn.

To add insult to injury, once Michaels began operating his own entity—SME—Taglioli seized on the opportunity to infringe on SME's trademark, "THE STRATOSPHERE PARTY BAND," by using the trademark and purchasing keyword advertisements through Google's search engine to create confusion, mislead potential clients of SME, and steer those clients to the Emerald Entities instead. Through this action, Plaintiffs seek to right these wrongs and to end Defendants' infringement and deception.

---

[1] This resulted in litigation in this District. *See Emerald City Management, L.L.C., et al. v. Jordan Kahn, et al.*, No. 4:14-cv-00358-RAS.

## PARTIES

1.     Plaintiff Jordan Kahn Music Company, L.L.C. is a Texas limited liability company with its principal place of business located in Texas. All members of JKMC are citizens and residents of Texas.

2.     Plaintiff Scott Swiecki, a/k/a Scott Michaels, is an individual residing in Collin County, Texas.

3.     Plaintiff Scott Michaels Entertainment LLC is a Texas limited liability company with its principal place of business located in Texas. All members of SME are citizens and residents of Texas.

4.     On information and belief, Defendant Dean "Deno" Taglioli is an individual residing in Collin County, Texas, and may be served with process at his residence, 4648 Old Pond Drive, Plano, Texas 75024.

5.     On information and belief, Defendant Emerald City Band, Inc. is a Texas Corporation with its principal place of business in Texas. ECB may be served with process by its Registered Agent, Dean "Deno" Taglioli, 4648 Old Pond Drive, Plano, Texas 75024.

6.     On information and belief, Defendant Emerald City Management, L.L.C. is a Texas limited liability company with its principal place of business in Texas. On information and belief, all members of ECM are citizens and residents of Texas. ECM may be served with process by its Registered Agent, Dean "Deno" Taglioli, at 4688 Reunion Drive, Plano, Texas 75024.

## JURISDICTION AND VENUE

7.     This is an action for trademark infringement, unfair competition, declaratory judgment, unjust enrichment, fraud, promissory estoppel, and tortious interference. The Court has jurisdiction over the subject matter of this action because this Complaint includes a claim under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* ("The Lanham Act"). The Court therefore has jurisdiction pursuant to at least 28 U.S.C. §§ 1331 and 1338(a). The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

8. The Court has personal jurisdiction over Defendants at least because Defendants are doing business in the State of Texas, including in this District, Defendants' misconduct described herein occurred in Texas, was directed into Texas, and was intended to damage Plaintiffs in Texas.

9. Venue is proper in this District under at least 28 U.S.C. § 1391(b)(1) and (b)(2).

## STATEMENT OF FACTS

### 1. Michaels' Former Employment with the Emerald Entities

10. Michaels is the owner of SME, which provides music and entertainment services throughout the United States, including the State of Texas and in this District. Before operating SME, Michaels was a former employee and Vice President of the Emerald Entities. For several years, Taglioli made promises to Michaels related to his future with the Emerald Entities, including Taglioli's intentions of making Michaels a co-owner and CEO. But all of Taglioli's promises were unfulfilled, fraudulent, and misleading.

### 2. Defendants' String-Along Fraudulent Scheme

11. From 2016 to 2019, Michaels had multiple conversations with Taglioli where he shared his needs and intentions of making Michaels a co-owner of the Emerald Entities when Taglioli was ready to sell and redistribute the management duties. Taglioli made numerous representations to Michaels indicating that he would have him take over the operations of the Emerald Entities, such as Taglioli needing to "pass the keys to the castle" to Michaels.

12. In April 2018, Taglioli promoted Michaels to Vice President and represented to the public and music industry that Michaels was Vice President of ECM. However, Taglioli abruptly demoted Michaels and pulled his Vice President title due to another disgruntled employee being upset about Michaels' promotion.

13. On or around February 10, 2020, Michaels submitted a letter of resignation to Taglioli based on his many unfulfilled promises and requested to terminate the non-compete agreements dated in February 2017 and March 2018 (collectively referred to as the "Non-Compete

Agreements"). Taglioli, however, refused to let Michaels resign and promised Michaels that Defendants would figure out a way to keep Michaels with the Emerald Entities. Michaels justifiably relied on Taglioli's representations and promises, to his detriment, and decided to continue his duties as an employee of the Emerald Entities rather than pursuing his own venture or seeking employment elsewhere. Around this time, Michaels formed SME, but it remained inactive during Michaels' employment with the Emerald Entities.

14.     Michaels made clear to Taglioli his intentions for finishing his career at the Emerald Entities. Thus, on or about March 13, 2020, Michaels and Taglioli began negotiating terms for a CEO position for Michaels with the Emerald Entities. After the same disgruntled employee who caused Michaels' demotion from Vice President decided to leave the Emerald Entities without notice, rather than continue negotiating with Michaels on terms for the CEO role, Taglioli engaged a third party to negotiate a franchise deal for ECB without Michaels' knowledge. While the franchise negotiations took place, Taglioli never disclosed them to Michaels. While the third-party franchise deal ultimately did not come to fruition, Michaels was shocked to hear Taglioli entered into these negotiations rather than negotiating his role as CEO as promised. Nevertheless, in April 2020, Taglioli continued to represent to Michaels that he was the perfect person to be the "face of the company" and reaffirmed his plans for Michaels to become CEO of the Emerald Entities.

15.     However, through May 2020, Taglioli continued to string Michaels along without having any agreed terms in writing as promised. Michaels confronted Taglioli, noting 86 days had elapsed since they agreed on the CEO role and that he needed to dissolve the Non-Compete Agreements and enter into written terms on the CEO position. Taglioli responded with, "Ok, you got it. You are the CEO now. Glad you are not leaving[,]" and told Michaels to tell the Emerald Entities' management the news. This was no surprise to the Emerald Entities' management since they also had conversations with Taglioli about Michaels becoming CEO. Taglioli also agreed to dissolve the Non-Compete Agreements. Thus, at this juncture, Michaels and the Emerald Entities' management moved forward with discussions about converting management over to Michaels and

restructuring the Emerald Entities to effectuate Michaels' new role as CEO. Taglioli continued representing to Michaels his intentions of transitioning management to him as CEO.

16. However, through June 2020, Taglioli failed to send any agreement to Michaels to review as he had promised and continued to delay finalizing his agreement with Michaels, stalled their discussions, and never sent any of the Emerald Entities' financial documents that Michaels requested. After Michaels followed up with Taglioli after several attempts, Taglioli hedged by asking Michaels if he had an offer for him to review.

17. In or around July 2020, Taglioli submitted an offer letter to Michaels for the position of *Chief Operating Officer*, not the CEO position that Taglioli repeatedly promised Michaels. The offer letter generally outlined an 80/20 top line revenue split of ECM; however, Taglioli refused to send the Emerald Entities' financial information to Michaels nor did Taglioli make him a financial offer. Rather, Taglioli asked Michaels to send what he thought would work financially— an impossible task for Michaels since Taglioli never submitted any valuations or financial information for Michaels to review and propose an offer. Michaels requested this critical financial information as Taglioli and Michaels continued to negotiate the terms.

18. Several days later, however, Taglioli suddenly terminated Michaels' employment, which effectively ended all negotiations for the CEO position. Taglioli agreed to allow Michaels, among other things, to use any of the Emerald Entities' musician track productions and sales leads. Additionally, Taglioli agreed that Michaels could hire any independent contractor-musicians that also worked for the Emerald Entities and announced this agreement to the entire Emerald Entities' group when Taglioli shared that Michaels was leaving the Emerald Entities.

19. Recently, on information and belief, Taglioli has again gone back on his word and threatened the Emerald Entities' independent contractors that if any of them play for SME, they will lose their jobs with the Emerald Entities. This is the exact opposite of what Taglioli promised Michaels and announced the day Michaels was terminated.

20. Michaels relied upon Taglioli's false representations and promises to his detriment. Taglioli's fraudulent string-along caused Michaels injury as he lost his job at the Emerald Entities,

his promised future of becoming CEO, and opportunities to work with other musicians who are independent contractors of the Emerald Entities.

**3.   The Addendum**

21.   As if termination—in the midst of a global pandemic and with a newborn son—was not bad enough, almost a month *after* Defendants unexpectedly let Michaels go despite their numerous false promises to make him CEO, on or about August 7, 2020, Defendants coerced Michaels to enter in an agreement entitled "Addendum." The Addendum is attached hereto as Exhibit A.

22.   The Addendum purports to modify the Non-Compete Agreements and contains the following provision:

> The Parties agree that their 2/15/17 and 3/1/18 agreements are modified as follows: (a) Scott Michaels is allowed to join and/or work with any bands or music businesses of his choosing except that he remains prohibited from working with Jordan Kahn and/or Joe Hargrave and any band(s) or company(s) affiliated with Jordan Kahn and/or Joe Hargrave for 24 months from the date of this Addendum; and (b) Scott Michaels is allowed to start and operate his own band(s) and/or music business(s).

23.   The restrictive provision set forth above is not reasonable in terms of the scope of the activity that is sought to be restrained.

24.   Additionally, as the Addendum was executed well after Michaels was terminated, there was no consideration for the Addendum.

25.   The Addendum is unreasonable and therefore unenforceable under Texas law.

**4.   SME Seeks to Work in Connection with JKMC**

26.   After his termination, Michaels began fully operating SME as the sole owner and providing music and entertainment services through his band, "Stratosphere Party Band."

27.   JKMC provides music and entertainment services throughout the United States, including the State of Texas and this District. JKMC is also a competitor of the Emerald Entities. Kahn, owner of JKMC, previously worked with Michaels and Taglioli at the Emerald Entities. Kahn resigned from the Emerald Entities in 2014 after Taglioli, among other things, fraudulently

strung him along with empty promises of becoming an equity owner in the Emerald Entities and fraudulently registered Kahn's own trademark, "Downtown Fever," as the Emerald Entities' mark—issues which were previously litigated in this District.

28. There is a justiciable controversy present as SME's band, the Stratosphere Party Band, seeks to work in connection with JKMC. Defendants, through Taglioli, sent an accusatory (and inaccurate) email to Michaels in October 2020 accusing Michaels of booking the Stratosphere Party Band for an event with the Derek Holland Foundation, which Taglioli claimed was a client of ECM. Although the accusation was false, it shows Defendants' confrontational nature, and Defendants' intention to enforce any non-competition provisions it can with respect to Plaintiffs. In light of Defendants' recent accusatory email and the litigation history between Defendants and Kahn, Plaintiffs anticipate Defendants will try to prevent SME's band, the Stratosphere Party Band, from working in connection with JKMC. Accordingly, Plaintiffs ask the Court to determine the rights and obligations on the part of Plaintiffs under the Addendum.

5. **The STRATOSPHERE PARTY BAND Mark**

29. Michaels formed SME, which created, originated, and developed the trademark—STRATOSPHERE PARTY BAND (the "Mark").

30. The Mark is inherently distinctive and serves to identify and indicate the source of SME's services to the consuming public. The Mark is intended to cover the categories of entertainment services in the nature of live audio performances by musical bands; entertainment services in the nature of live visual and audio performances by bands; entertainment services in the nature of live visual and audio performances by musical bands for weddings, corporate events, and festivals; and musical services in the nature of live vocal performances by musical bands.

31. SME created and uses and intends to continue using the Mark to attract audiences and clients. The Mark is consistently used in SME's media and promotional activities. In light of SME's use and promotion of the Mark, the Mark has become distinctive to designate SME, to distinguish SME and its services from those of others, and to distinguish the source or origin of

SME's services. As a result of these efforts by SME, the consuming public, including in Texas, recognizes and associates the Mark with SME.

32. As a result of SME's use and promotion of the Mark, SME has acquired valuable and enforceable common law rights in the Mark.

### 6. Defendants' Infringing Scheme

33. Defendants have engaged in an infringing scheme to harm SME and the Mark in Texas and to deceptively induce prospective clients who are using online searches to specifically seek out SME and the Stratosphere Party Band into mistakenly contacting Defendants and engaging a band through Defendants instead.

34. To carry out their scheme, Defendants purchased the Mark as keyword advertisements on mobile devices through Google's search engine and use them in conjunction with a "click-to-call" advertisement. Upon information and belief, Defendants purchased the Mark as keyword ads on mobile devices for use in click-to-call ads because of the likelihood that consumers will be confused and quickly click on Defendants' ad not realizing the link is not affiliated with SME.

35. As a result, Google searches for "Stratosphere Party Band" on mobile devices result in search pages that display Defendants' advertisement and www.emeraldcityband.com, often directly below the Mark, as shown below.



36.     Defendants' online click-to-call advertisements display generic terms that consumers might associate with any party band. Consumers specifically searching for "Stratosphere Party Band" are likely to believe that Defendants' advertisements are actually for SME or the Stratosphere Party Band or that Defendants are somehow affiliated with SME or the Stratosphere Party Band. This is particularly true on mobile devices, where consumers are quickly searching, the typeface of the ads is much smaller, and the only content displayed on the screen is an advertisement directly below the Mark, which consumers have entered as a search term.

37.     Defendants' online advertisements on mobile devices include a click-to-call link. Consumers who click on the click-to-call link (intentionally or not) are directly connected to the Emerald Entities—without navigating to a website more conspicuously identifying the Emerald Entities before the call is made.

38.     Defendants' scheme is a bait-and-switch effort to lure clients, who were specifically searching for "Stratosphere Party Band," into engaging Defendants instead. In this manner,

Defendants wrongfully induce prospective clients trying to reach SME into engaging Defendants instead. The nature of their scheme leaves little doubt as to Defendants' bad-faith intent.

39. Defendants have used or are using the Mark in commerce, including in Texas. Defendants' use of the Mark began after SME developed rights in the Mark and after Defendants terminated Michaels.

40. Defendants are not affiliated with SME and have not been authorized by SME to use the Mark or any mark confusingly similar to the Mark.

41. Defendants' unauthorized use of the Mark is likely to cause confusion, to cause mistake, and to deceive customers and potential customers of the parties, at least as to some affiliation, connection, or association of Defendants with SME, or as to origin, sponsorship, or approval of Defendants' services by SME.

42. Defendants' unauthorized use of the Mark falsely designates the origin of their services and falsely and misleadingly describes and represents facts with respect to Defendants and their services.

43. Defendants' unauthorized use of the Mark enables Defendants to trade on and receive the benefit of reputation and goodwill built up by SME and Michaels and to gain acceptance for their services not solely on their own merits, but on the reputation of SME, the Stratosphere Party Band, the Mark, Michaels, and SME's services.

44. Defendants' unauthorized use of the Mark allows Defendants to appropriate the product of SME's efforts, thereby enabling Defendants to gain a special advantage in competing with SME.

45. Defendants' unauthorized use of the Mark is likely to dilute the Mark as its use weakens the ability of the Mark to clearly and unmistakably distinguish the source of SME's services.

46. Defendants' unauthorized use of the Mark unjustly enriches Defendants at SME's expense. Defendants have been and/or continue to be unjustly enriched by obtaining a benefit from SME by taking undue advantage of SME. Specifically, Defendants have taken undue advantage of

SME by trading on and profiting from the Mark developed by SME, resulting in Defendants wrongfully obtaining a monetary or reputational benefit for their own businesses and services. Defendants' unauthorized use of the Mark removes from SME the ability to control the nature and quality of the services provided under the Mark.

47. Defendants' unauthorized use of the Mark has prevented an otherwise likely business relationship from forming between SME and its prospective consumers. The nature of Defendants' scheme demonstrates they intended to interfere with SME's prospective relationships, and that they knew their use of the Mark was certain or substantially certain to prevent SME from forming business relationships with prospective customers. Such interference and misappropriation has harmed and damaged SME.

48. Unless these acts of Defendants are restrained by the Court, they will continue, and they will continue to cause irreparable injury to SME and to the public for which there is no adequate remedy at law.

## CAUSES OF ACTION

**Count 1: Violation of Lanham Act Section 43(a) (Brought by SME and JKMC)**

1. SME and JKMC incorporate by reference the preceding paragraphs.

2. The acts of Defendants complained of herein constitute trademark infringement, false designation of origin, false or misleading descriptions or representations of fact and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

3. SME and JKMC have been damaged by Defendants' acts of trademark infringement, false designation or origin, false or misleading descriptions or representations of fact and unfair competition.

**Count 2: Common Law Trademark Infringement (Brought by SME)**

4. SME incorporates by reference the preceding paragraphs.

5. The acts of Defendants complained of herein constitute trademark infringement in violation of the common law of the State of Texas.

**Count 3: Common Law Unfair Competition (Brought by SME and JKMC)**

6. SME and JKMC incorporate by reference the preceding paragraphs.

7. The acts of Defendants complained of herein constitute unfair competition in violation of the common law of the State of Texas.

**Count 4: Unjust Enrichment (Brought by SME)**

8. SME incorporates by reference the preceding paragraphs.

9. The acts of Defendants complained of herein constitute unjust enrichment of Defendants at the expense of SME.

**Count 5: Tortious Interference (Brought by SME)**

10. SME incorporate by reference the preceding paragraphs.

11. The acts of Defendants complained of herein constitute tortious interference with a prospective business opportunity.

**Count 6: Declaratory Judgment (Brought by SME, Michaels, and JKMC)**

12. Plaintiffs incorporate by reference the preceding paragraphs.

13. Plaintiffs maintain, in terms of their claim for declaratory relief pursuant to 28 U.S.C. § 2201, that the restrictions being placed on Michaels under the Addendum with regard to post-employment with the Emerald Entities are invalid and unenforceable. The Addendum imposes a greater restraint than is reasonably necessary to protect any legitimate interest or expectations on the part of Defendants. Furthermore, the prohibitions are not reasonable in terms of the scope of the activity to be restrained, and there is no consideration for the prohibitions.

14. Plaintiffs seek a declaration from the Court regarding the rights and obligations of the parties under the Addendum—specifically, that the Addendum does not prohibit or restrict SME's band, the Stratosphere Party Band, from working in connection with a company affiliated with Kahn.

**Count 7: Common-Law Fraud (Brought by Michaels)**

15. Michaels incorporates by reference the preceding paragraphs.

16. Defendants made untrue statements, misleading omissions, and/or unfulfilled promises in connection with the transactions described above. Specifically, Taglioli represented to Michaels that he would become CEO of the Emerald Entities. In the course of discussions concerning the CEO role, Taglioli represented that he would provide an agreement effectuating Michaels as CEO and that he agreed to dissolve the Non-Compete Agreements. Further, when Defendants terminated Michaels, Taglioli represented to Michaels that he could work with the Emerald Entities' independent contractors.

17. Defendants' statements and promises were false and/or omissions were misleading. In particular, Taglioli did not offer him a CEO position with the Emerald Entities, but rather a COO position. Taglioli never formally dissolved the Non-Compete Agreements as promised, but instead purported to modify the Non-Compete Agreements and, among other things, attempted to restrict Michaels from working with any company affiliated with Kahn, including JKMC. Further, Taglioli reneged his promise by threatening that if any of Emerald Entities' independent contractors played for Michaels or SME, they would lose their jobs with the Emerald Entities. The untrue statements, false promises, and/or misleading omissions involved material facts in that, but for those statements, promises, or omissions, Michaels would not have entered into prolonged negotiations with Defendants and would have resigned months before he was terminated without reason.

18. Defendants, with intent to deceive or defraud and/or with disregard for the truth, conducted the fraudulent acts that are the basis of this action.

19. Michaels justifiably relied on Defendants' misrepresentations, false promises, and/or omissions to his detriment.

20. As a result of the fraudulent acts alleged above, Michaels suffered injury in that he lost his job with the Emerald Entities (and therefore lost his wages from his employment), any

prospective future of becoming CEO of the Emerald Entities, and opportunities to work with other independent contractors who work with the Emerald Entities.

**Count 8: Promissory Estoppel (Brought by Michaels)**

21. Michaels incorporates by reference the preceding paragraphs.

22. Taglioli made promises to Michaels that Michaels would become CEO of the Emerald Entities and that Defendants would dissolve the Non-Compete Agreements. The promises were declarations that made Michaels act in a specific way and gave Michaels the right to expect performance.

23. Michaels reasonably and substantially relied on the promises to his detriment.

24. Michaels' reliance was foreseeable to Taglioli.

25. Injustice can be avoided only by enforcing Taglioli's promise.

26. As a result of Taglioli's failure to keep his promises, Michaels has been damaged including reliance damages, interest, court costs, and attorneys' fees.

## DAMAGES

27. Plaintiffs incorporate by reference the preceding paragraphs.

28. Pursuant to 15 U.S.C. § 1117(a), SME is entitled to recover Defendants' profits, damages sustained by SME, and the costs of the action, and/or such sums as the Court shall find to be just under the circumstances. In addition, this is an exceptional case, and SME is entitled to an award of attorneys' fees under 15 U.S.C. § 1117(a).

29. Plaintiffs are also entitled to recover at least actual damages, lost profits, consequential damages, reliance damages, attorneys' fees, pre-judgment and post-judgment interests, and court costs.

30. SME seeks a permanent injunction prohibiting Defendants from infringing on its Mark.

## EXEMPLARY DAMAGES

31. Plaintiffs incorporate by reference the preceding paragraphs.

32. Pursuant to at least TEX. CIV. PRAC. & REM. CODE § 41.003, Plaintiffs are entitled to exemplary damages because harm to them resulted from Defendants' fraud or malice.

## ATTORNEYS' FEES

33. Plaintiffs incorporate by reference the preceding paragraphs.

34. Pursuant to at least 15 U.S.C. § 1117, 28 U.S.C. § 2202, TEX. CIV. PRAC. & REM. CODE § 37.009, and law and equity, Plaintiffs are entitled to reasonable attorneys' fees. Plaintiffs request that the Court grant Plaintiffs' reasonable attorneys' fees and expenses for the prosecution of the case and any appeal. Plaintiffs have made proper presentment.

## DEMAND FOR JURY TRIAL

35. Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs pray that the Court enter judgment awarding them the following relief:

A. Actual damages;

B. Declaratory judgment;

C. Permanent injunctive relief;

D. Exemplary damages;

E. Attorneys' fees and expenses;

F. Costs;

G. Pre- and post-judgment interest; and

H. All other relief Plaintiffs are entitled to.

January 15, 2021

Respectfully submitted,

**GRIFFITH BARBEE PLLC**

/s/ *Casey Griffith*

Casey Griffith
Texas Bar No. 24036687
Casey.Griffith@griffithbarbee.com

Michael Barbee
Texas Bar No. 24082656
Michael.Barbee@griffithbarbee.com

Ashley Norton
Texas Bar No. 24105886
Ashley.Norton@griffithbarbee.com

One Arts Plaza
1722 Routh St., Ste. 710
Dallas, Texas 75201
(214) 446-6020 | main
(214) 446-6021 | fax

**Counsel for Plaintiffs**


**BRAXTON PERRONE, PLLC**

/s/ *Bobby W. Braxton*

Bobby W. Braxton
Texas Bar No. 24059484
braxton@braxtonperrone.com
5000 Legacy Drive, Suite 465
Plano, TX 75024

**Counsel for Plaintiff Scott Michaels and Scott Michaels Entertainment LLC**