# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

JORDAN KHAN MUSIC COMPANY, LLC,  §
SCOTT SWIECKI A/K/A SCOTT        §
MICHAELS, AND SCOTT MICHAELS     §
ENTERTAINMENT LLC,               §
                                 §
        *Plaintiffs*,            §
                                 §
                                 §    Civil Action No. 4:21-CV-00045
v.                               §    Judge Mazzant
                                 §
DEAN "DENO" TAGLIOLI, EMERALD    §
CITY BAND, INC., AND EMERALD CITY §
MANAGEMENT, LLC,                 §
                                 §
        *Defendant*.             §

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs Jordan Khan Music Company, LLC, Scott Swiecki a/k/a Scott Michaels, and Scott Michaels Entertainment LLCs' Opposed Motion for Leave to Amend Complaint (Dkt. #38). Having considered the relevant pleadings, the Court finds Plaintiffs' motion should be **GRANTED**.

## BACKGROUND

The parties in this action are well known in the music and entertainment industry, as well as in this Court. Defendant Deno Taglioli ("Taglioli") is the sole owner of Emerald City Band ("ECB") and sole member of Emerald City Management (ECM) (together with ECB, the "Emerald City Entities" and collectively with Taglioli, "Defendants"). Taglioli previously worked with Plaintiff Scott Michaels ("Michaels") and Movant Jordan Khan ("Khan"), each musicians who have now cut ties with Defendants and pursued success with their own companies—Scott Michaels Entertainment ("SME") and Jordan Khan Music Company ("JKMC"), respectively. SME and

JKMC have become competitors of the Emerald City Entities (Dkt. #1 at p. 2). After Khan's 2014 departure from Emerald City Entities, ECM brought suit (the "Prior Suit") in this Court alleging several claims against Khan, including violations of the Lanham Act (4:14-cv-358 (Dkt. #1)). Khan countersued, alleging Lanham Act violations against Defendants, among other claims (4:14-cv-358 (Dkt. #14)). The crux of the suit involved the parties' disagreement as to who held the license for the trademark "Downtown Fever."

The case proceeded to trial, but before the Court charged the jury, the parties entered into a settlement agreement (the "Settlement") (4:14-cv-358 (Dkt. #210)). This Court accordingly dismissed each of the claims with prejudice on April 4, 2016 (4:14-cv-358 (Dkt. #213)).

Since that time, Plaintiff Michaels has become part of the controversy surrounding the Emerald City Entities. Michaels was a former employee and Vice President of the Emerald City Entities (Dkt. #12). During his employment, Taglioli allegedly promised Michaels that he would become a co-owner of Emerald City Entities when Taglioli was ready to sell and redistribute the management duties (Dkt. #12 ¶ 11). In April 2018, Taglioli allegedly "promoted Michaels to Vice President and represented to the public and music industry that Michaels was Vice President of ECM" but "abruptly demoted Michaels and pulled his Vice President title" (Dkt. #12 ¶ 12). Rather than allowing Michaels to then resign, Taglioli allegedly "promised Michaels that Defendants would figure out a way to keep Michaels with the Emerald City Entities" (Dkt. #12 ¶ 13). These representations continued into May 2020 with no agreed terms in writing until Taglioli verbally told Michaels: "You are the CEO now" (Dkt. #12 ¶ 15). Still, Taglioli sent no agreement finalizing the details.

In or around July 2020, "Taglioli suddenly terminated Michaels' employment, which effectively ended all negotiations for the CEO position" (Dkt. #12 ¶ 18). Taglioli, however,

"agreed to allow Michaels . . . to use any of the Emerald City Entities' musician track productions and sales leads" and to "hire any independent contractor-musicians that also worked for the Emerald City Entities" (Dkt. #12 ¶ 18).

Michaels claims, among other things, that Defendants did not follow through with these promises, and, further, that Defendants "have engaged in an infringing scheme to harm SME" and related trademarks "and to deceptively induce prospective clients who are using online searches to specifically seek out SME . . . into mistakenly contacting Defendants and engaging a band through Defendants instead" (Dkt. #12 ¶ 33).

On January 15, 2021, Plaintiffs Michaels, SME, and JKMC brought suit against the Defendants alleging violations of the Lanham Act, common law trademark infringement, common law unfair competition, unjust enrichment, tortious interference, fraud, and promissory estoppel (Dkt. #12 ¶¶ 53–85). Plaintiffs also request a declaratory judgment regarding enforceability of certain post-termination agreements and the parties' respective rights related to Defendants' alleged copyrights (Dkt. #12 ¶¶ 64–85).

As discovery unfolded, Plaintiffs became privy to Defendants' use of keyword advertisement search terms for Google. Upon Plaintiffs' request, the Court granted a two-week extension of time for Plaintiffs to move for leave to amend so that they could evaluate joinder by Kahn and potential new claims against Defendants. On September 8, 2021, prior to the amended deadline, Plaintiffs and Kahn filed the present Motion for Leave to File Plaintiffs' Second Amended Complaint (Dkt. #38). Plaintiffs seek to bring additional claims against Defendants for violations of Civil RICO, and Khan seeks to bring a claim of common law invasion of privacy or appropriation of name or likeness (Dkt. #39 ¶¶ 134–155). Plaintiffs also seek to modify their Lanham Act claims to include a violation specific to JKMC. Defendants filed their response on

3

September 22, 2021 (Dkt. #42). On September 30, 2021, Plaintiffs filed their reply (Dkt. #44), and Defendants filed their sur-reply on October 6, 2021 (Dkt. #46).

## LEGAL STANDARD

"When a trial court imposes a scheduling order, Federal Rules of Civil Procedure 15 and 16 operate together to govern the amendment of pleadings." *Tex. Indigenous Council v. Simpkins*, 544 F. App'x. 418, 420 (5th Cir. 2013). Rule 15(a) governs a party's request to amend its pleading before a scheduling order's deadline to amend passes. *See id*. Rule 16(b)(4) governs a party's request to amend its pleading after the deadline to amend passes. *Sapp v. Mem'l Hermann Healthcare Sys.*, 406 F. App'x. 866, 868 (5th Cir. 2010) (citing *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003)).

Rule 15(a) provides that a party may amend its pleading once without seeking leave of court or the consent of the adverse party at any time before a responsive pleading is served.  After a responsive pleading is served, "a party may amend only with the opposing party's written consent or the court's leave." *Id.* Rule 15(a) instructs the court to "freely give leave when justice so requires." *Id.* The rule "'evinces a bias in favor of granting leave to amend.'" *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Lyn–Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)). But leave to amend "is not automatic." *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F. Supp. 2d 704, 718 (S.D. Tex. 2000) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)). Whether to grant leave to amend "lies within the sound discretion of the district court." *Little v. Liquid Air Corp.*, 952 F.2d 841, 845–46 (5th Cir. 1992). A district court reviewing a motion to amend pleadings under Rule 15(a) considers five factors: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5)

futility of amendment. *Smith v. EMC*, 393 F.3d 590, 595 (5th Cir. 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

According to the Fifth Circuit, futility under Rule 15 means "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000). In determining futility, courts apply "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund*, 594 F.3d at 387.

The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556

U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Because Plaintiffs filed leave to amend before the deadline set forth in the Scheduling Order, the Court applies the Fifth Circuit's analysis under Rule 15(a). Defendants assert only that factors four and five—undue prejudice and futility of amendment—are at issue. The Court addresses each factor in turn.

## I.     Undue Prejudice to Defendants

The Court finds that the amendment will not unduly prejudice Plaintiffs. Defendants argue that if the Court grants Plaintiffs leave to amend, then they will face undue prejudice because Plaintiffs did not offer the pleadings to Defendants before filing, thereby frustrating Local Rule CV-7(h). Further, Defendants claim they will face prejudice if the Court does not provide them "adequate time to conduct relevant discovery, file dispositive motions, and seek other pretrial relief or rights" (Dkt. #42 at p. 2). But the Court finds Defendants overstate the extent of any prejudice that will occur.

First, Plaintiffs requested leave to amend early in the case when only limited discovery had taken place and no dispositive motions had been filed. *See KaZee, Inc. v. Raimer*, No. 4:19-cv-00031, 2020 WL 6382631, at *3 (E.D. Tex. Oct. 30, 2020) (finding "little, if any," prejudice where leave to amend was sought after a single motion to dismiss, no amendment to the pleadings, and some discovery ordered with respect to preliminary injunction hearing). Second, the Court granted Defendants' first and subsequent Motions to Extend Certain Pretrial Deadlines (Dkts. #37, #48, #52). Defendants have now filed their first Motion for Summary Judgment (Dkt. #55) in which they indicate that, should the Court grant the present leave to amend, Defendants "will respectfully seek to address the Second Amended Complaint separately" (Dkt. #55 at p. 8). The Court will grant Defendants relief in this context to the extent such relief comports with the Federal Rules of Civil Procedure and Fifth Circuit precedent and will prevent undue prejudice. Consequently, the Court finds that granting leave to amend will not unduly prejudice Defendants. This factor favors granting leave to amend.

## II.    Futility of Amendment

Further, the Court finds the amendment is not futile. As mentioned, futility under Rule 15 means "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000). In determining futility, courts apply "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.*

Defendants argue that Plaintiffs allege futile claims in that they are barred by res judicata and insufficiently pleaded. Specifically, Defendants assert that Khan could have brought his claims against Defendants in the Prior Suit, but, because he did not, those claims are barred by res judicata. Further, Defendants contend that Kahn's claim of invasion of privacy or appropriation cannot satisfy the pleading standard because Plaintiffs and Kahn "do not plead facts showing that a search

for 'Jordan Kahn' ever resulted in any advertisement for Defendants" nor do they "plead that the name appeared in any advertisement seen by the public" (Dkt. #42 at p. 7). Additionally, Defendants argue that Plaintiffs fail to state a claim for Civil RICO under 18 U.S.C. §§ 1962(c) or (d) because they do not allege a "receipt of income" or "injur[y] in their business or tangible property" necessary under the RICO elements (Dkt. #42 at p. 9).

Lastly, Defendants contend that Plaintiffs cannot modify their Lanham Act claims to include a violation specific to JKMC because Plaintiffs do not allege that any names owned by Plaintiffs "actually appeared in any advertisement or other publication visible to the public" (Dkt. #42 at p. 12).

### A. Res Judicata

Defendants argue Khan cannot now bring a claim for invasion of privacy or appropriation of name or likeness against Defendants because he had the opportunity to assert counterclaims in the Prior Suit. This, Defendants argue, renders the new claims barred by res judicata.

Defendants bear the burden to prove res judicata. *See Richardson v. Wells Fargo Bank, N.A.*, 839 F.3d 442, 448 (5th Cir. 2016). Because the Prior Suit concluded in federal court federal law determines the res judicata effect of that judgment. *Gulf Island IV, Inc. v. Blue Streak Gulf Is Ops*, 24 F.3d 743, 746 (5th Cir. 1994). A claim is barred by federal principles of res judicata if: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Test Masters Educ. Services, Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).

The final judgment in the Prior Suit consisted of a dismissal with prejudice based on the parties' Settlement. While there are circumstances where "a settlement agreement approved and

embodied in a final judgment of the court is entitled to full res judicata effect," *Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 326 (5th Cir. 2006), Defendants provide no argument or analysis to show why the Court should apply res judicata in this case. Further, Defendants provide no argument or analysis to show how the same claim or cause of action was involved in the Prior Suits. Defendants merely assert that the actions Plaintiffs allege in their Second Amended Complaint, at least in part, occurred before the Court's final judgment in the Prior Suit. But the claims are different. To be sure, the Prior Suit focused on the trademark "Downtown Fever"—a mark not mentioned in any of the claims currently before the Court. Moreover, Plaintiffs were unaware of the Google keywords relating to Khan as an individual until August 2021, so Khan could not have asserted such claims in the Prior Suit, which the Court dismissed in April 2016 (Dkt. #44 at p. 3).

Accordingly, Defendants have not shown why or how res judicata bars Khan's claim.

## B.  Failure to State a Claim

Defendants also argue that Plaintiffs fail to state a claim upon which relief can be granted for each of the new claims asserted and the modified Lanham Act claim. Accepting as true all well-pleaded facts in Plaintiffs' Second Amended Complaint, and viewing them in the light most favorable to Plaintiffs, the Court finds that each of Plaintiffs' additional and modified claims plausibly suggest an entitlement to relief. Absent a claim which is obviously insufficient, a court should not grant a Rule 12(b)(6) motion to dismiss, thereby denying Plaintiffs an opportunity to develop facts to support their Complaint. Issues pertaining to Plaintiffs' invasion of privacy, RICO, and Lanham Act claims are better resolved at the summary judgment stage.

Accordingly, the Court finds that Plaintiffs' motion for leave to amend is not futile. This factor favors granting leave to amend. For the foregoing reasons, the Court finds it should grant

Plaintiffs leave to amend under Rule 15(a), which "evinces a bias in favor of granting leave to amend." *Lyn–Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d at 286.

## CONCLUSION

It is therefore **ORDERED** that Plaintiffs' Opposed Motion for Leave to Amend Complaint (Dkt. #38) is hereby **GRANTED**, and Plaintiffs' Second Amended Complaint (Dkt. #41) is deemed filed.

**IT IS SO ORDERED**.

**SIGNED this 19th day of January, 2022.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE