# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| JORDAN KHAN MUSIC COMPANY, LLC, SCOTT SWIECKI A/K/A SCOTT MICHAELS, JORDAN KHAN, AND SCOTT MICHAELS ENTERTAINMENT LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>DEAN "DENO" TAGLIOLI, EMERALD CITY BAND, INC., AND EMERALD CITY MANAGEMENT, LLC,<br><br>*Defendants*. | Civil Action No. 4:21-CV-00045<br>Judge Mazzant |

## **ORDER**

Pending before the Court is Plaintiffs Scott Michaels and Jordan Kahn Music Company's oral Motion for Judgment as a Matter of Law on the Enforceability of the Noncompete Provisions in the Addendum and the 2018 Agreement (*see* Dkt. #203 at p. 4). Having considered the motion and reviewed the relevant law, the Court finds that the motion should be **GRANTED**.

## BACKGROUND

The facts of this case are more fully set forth in this Court's Order on Plaintiffs' Motion for Leave to Amend Complaint (Dkt. #84). Relevant to the present consideration, Plaintiff Scott Michaels ("Michaels") and Plaintiff Jordan Khan ("Khan"), each musicians, both previously worked for Defendants Dean "Deno" Taglioli ("Taglioli"), Emerald City Band ("ECB"), and Emerald City Management ("ECM") (collectively, the "Emerald City Defendants"). Michaels and Khan have since cut ties with Defendants and pursued success with their own companies—Scott

Michaels Entertainment ("SME") and Jordan Khan Music Company ("JKMC"), respectively. SME and JKMC have become competitors of the Emerald City Defendants.

During Michaels' employment with Defendants, Michaels worked as a band leader, sales support representative, and sales associate. In 2018, while working as a band leader, Michaels signed an employment contract that contained a noncompete agreement (aka "covenant to not compete") (Dkt. #191 at pp. 10–11) (the "Agreement"). Under the relevant terms of the Agreement, Michaels agreed that, upon termination of his employment with the Emerald City Defendants, Michaels could not, for a period of 24 months:

> [E]ngage either as an individual or as part of ECB/ECM competition, Jordan Kahn or any band affiliated with Jordan Kahn, in10city or any band affiliated with Joe Hargrove, Absolute entertainment bands and the Walton Stout Bands.

(Dkt. #191 at pp. 10–11).

When Michaels departed from his position with the Emerald City Defendants, he signed an addendum to the Agreement (Dkt. #191 at p. 13) (the "Addendum"). The Addendum expressed an agreement between Michaels and the Emerald City Defendants to modify the existing noncompete provision of the Agreement. The modifications in the Addendum loosened the restrictions of the noncompete, thereby permitting Michaels to "join and/or work with any bands or music businesses of his choosing" or "start and operate his own band(s) and/or music businesses" (Dkt. #191 at p. 13). However, the Addendum expressly stated that Michaels "remain[ed] prohibited from working with Jordan Kahn and/or Joe Hargrave and any band(s) or company(s) affiliated with Jordan Kahn and/or Joe Hargrave for 24 months from the date of th[e] Addendum" (Dkt. #191 at p. 13). Further, the Addendum also granted Michaels a "gratis license" to use certain backing tracks created by the Emerald City Defendants, revocable upon 45 days' notice from the Emerald City Defendants. Other than these changes, "[a]ll other post-termination

provisions of prior agreements between [the] Emerald City [Defendants] and [ ] Michaels remain[ed] in effect" (Dkt. #191 at p. 13).

Defendants contend that shortly after signing the Addendum, Michaels entered into business arrangements with JKMC in competition with ECB and ECM, including arrangements that effectively gave Kahn fifty percent ownership of and effective control over Michaels' company, SME (Dkt. #191 at p. 3). Plaintiffs assert that the only business relationship between Michaels and Kahn stems from JKMC serving as SME's booking agent.

On January 15, 2021, Michaels brought suit against Defendants, in part requesting a declaratory judgment that both the Agreement and the Addendum are unenforceable (Dkt. #39 at pp. 25–26). The Emerald City Defendants brought counterclaims against Michaels for breach of the Addendum and the Agreement and against JKMC for tortious interference with the Addendum and the Agreement (Dkt. #57 at p. 21). On August 1, 2022, Plaintiffs filed a Trial Brief on Enforceability of Noncompetition Agreements (Dkt. #184) to which Defendants responded on August 4, 2022 (Dkt. #191). On August 4, 2022, Plaintiffs filed their reply (Dkt. #196). Also on August 4, 2022, a jury trial for this matter commenced. On August 10, 2022, the Defendants rested and Plaintiffs Michaels and JKMC moved for judgment as a matter of law, asking the Court to hold unenforceable the noncompete provisions in the Addendum and the Agreement. By granting this request, the Court finds it unnecessary to submit to the jury the Emerald City Defendants' claims for breach of contract against Michaels or tortious interference against JKMC.

## ANALYSIS

Plaintiffs allege that both the Agreement and the Addendum are unenforceable as a matter of law because the covenants not to compete contained in those contracts unreasonably restrict the scope of Michaels' post-termination conduct. In response, the Emerald City Defendants contend

that the Agreement and the Addendum are enforceable because they do not impose a greater restraint than necessary to protect ECB's business interest.

In Texas, the enforceability of a covenant not to compete (or "noncompete") is a question of law for the court. *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 295 (5th Cir. 2004). The Texas Business and Commerce Code provides that "[e]very contract . . . in restraint of trade or commerce is unlawful." TEX. BUS. & COM. CODE § 15.05.  Thus, "[a]n agreement not to compete is in restraint of trade and therefore unenforceable . . . unless it is reasonable." *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681 (Tex. 1990). The Texas Covenants Not to Compete Act sets forth two criteria for the enforceability of a noncompete: it must be (1) "ancillary to or part of an otherwise enforceable agreement at the time the agreement is made;" and (2) contain "limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." TEX. BUS. & COM. CODE § 15.50(a).

Importantly, the Supreme Court of Texas has noted that "[t]he hallmark of enforcement is whether or not the covenant is reasonable." *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 777 (Tex. 2011). When determining the enforceability of a covenant, a court should not focus on "overly technical disputes" with regard to the ancillary nature of the noncompete to an agreement. *Id.* Instead, the court should inquire "whether the covenant 'contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.'" *Id*. (citing § 15.50(a)).

As discussed above, a noncompete is enforceable under Texas law only if any limitations as to time, geographical area, and scope of activity to be restrained are reasonable. *TransPerfect*

*Translations, Inc. v. Leslie*, 594 F. Supp. 2d 742, 752 (S.D. Tex. 2009); *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 658 (Tex. 2006). In determining reasonability of the noncompete, the "purpose" of the restrictions on noncompetition agreements is relevant—that is, "'to maintain and promote economic competition in trade and commerce' occurring in Texas." *Marsh*, 354 S.W.3d at 769 (quoting TEX. BUS. & COM. CODE § 15.04). On one hand, "[u]nreasonable limitations on employees' abilities to change employers or solicit clients or former co-employees, *i.e.*, compete against their former employers, could hinder legitimate competition between businesses and the mobility of skilled employees." *Id.* (citations omitted). "On the other hand, valid noncompetes constitute reasonable restraints on commerce agreed to by the parties and may increase efficiency in industry by encouraging employers to entrust confidential information and important client relationships to key employees." *Id.* (citations omitted). Accordingly, the Court will consider whether the restrictions in the Agreement and the Addendum are reasonable.

Under the Agreement, in relevant part, Michaels promised that for a period of 24 months after termination, he would not:

> [E]ngage either as an individual or as part of ECB/ECM competition, Jordan Kahn or any band affiliated with Jordan Kahn, in10city or any band affiliated with Joe Hargrove, Absolute entertainment bands and the Walton Stout Bands.

(Dkt. #191 at pp. 10–11). Similarly, in relevant part, under the Addendum, Michaels agreed he could:

> (1) [J]oin and/or work with any bands or music businesses of his choosing *except* that he remains prohibited from working with Jordan Kahn and/or Joe Hargrave and any band(s) or company(s) affiliated with Jordan Kahn and/or Joe Hargrave for 24 months from the date of this Addendum

(Dkt. #191 at p. 13).

The Addendum and the Agreement both prevent Michaels from working in any capacity with Kahn. Specifically, the agreements prohibit Michaels from "engag[ing]," "join[ing]," and

5

"working" with Kahn or any band affiliated with Kahn. Plaintiffs aver that this language is unreasonably broad in scope, as it contains no geographic restriction nor a restriction of employment activities. Defendants respond that the restraints are reasonable because they are limited only to named competitors.

Neither the Agreement nor the Addendum contains a geographic restriction. But "the lack of geographic restriction in the covenant does not necessarily render the clause unreasonable." *Marquis Software Sols., Inc. v. Robb*, No. 3:20-CV-0372, 2020 WL 955901, at *6 (N.D. Tex. Feb. 27, 2020) (internal citations omitted). Rather, "[t]he permissible breadth of the geographic applicability of a noncompete provision depends both on the nature of the business and the degree of the employee's involvement in the business." *Providence Title Co. v. Truly Title, Inc.*, 547 F. Supp. 3d 585, 602 (E.D. Tex. 2021) (citing *AmeriPath, Inc. v. Hebert*, 447 S.W.3d 319, 335 (Tex. App.—Dallas 2014, pet. denied)). Indeed, noncompetes with restrictions covering a wide geographic area may be reasonable under certain circumstances, such as "when it has been clearly established that the business is national in character." *Vais*, 383 F.3d at 296 n.20; *see also Daily Instruments Corp. v. Heidt*, 998 F. Supp. 2d 553, 567 (S.D. Tex. 2014) ("Covenants with wide geographic areas have been upheld in Texas courts, especially when the area covered constitutes the employees['] actual sales or work territory.").

The record confirms the Emerald City Defendants' business covers an area national in scope. As a band leader and sales associate for the Emerald City Defendants, Michaels engaged in business nationwide through marketing, contracting, and performing gigs. Accordingly, the Court finds that reasonability, rather, turns on whether the Addendum and the Agreement contain reasonable "limitations as to . . . [the] scope of activity to be restrained." § 15.50(a).

"A restrictive covenant is unreasonable unless it bears some relation to the activities of the employee." *Wright v. Sport Supply Grp, Inc.*, 137 S.W.3d 289, 298 (Tex. App.–Beaumont 2004, no pet.) (citing *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 386–87 (Tex. 1991)). In *Weber Aircraft v. Krishnamurthy*, this Court examined a noncompete provision that, in part, prevented the employee from working for five specific competitors "in any capacity." No. 4:12-CV-666, 2014 WL 12521297, at *8 (E.D. Tex. Jan. 27, 2014). This Court held the noncompete was unreasonably broad because it was not related in any way to the employee's specific job activities and did not define the specific work which the employee was prohibited from engaging. *Id.* The Court explained that "[t]o preclude work of any type for the five competitors of [employer], even a position that would not require [employee] to use any of [employer's] confidential information . . . is an unreasonable restraint on competition." *Id.* Similarly, in *McKissock, LLC v. Martin*, our sister court found unreasonable a noncompete prohibiting the employee's employment, retention by, participation in, or connection "in any manner with any business or practice . . . in competition with" the employer. 267 F. Supp. 3d 841, 856 (W.D. Tex. 2016).

*Weber* and *McKissock* are not outliers. Several Texas courts and federal courts applying Texas law have found that a noncompete unreasonably restricts competition when the restraint is not limited to the capacity in which the employee worked for the employer. *See, e.g.*, *McNeilus Cos. Inc. v. Sams*, 971 S.W.2d 507, 511 (Tex. App.–Dallas 1997, no writ) (upholding trial court's finding of unreasonability); *Accruent, LLC v. Short*, 2018 WL 297614, at *6 (W.D. Tex. Jan. 4, 2018) ("[N]oncompete agreements barring an employee from working for a competitor in any capacity are invalid."); *Merritt Hawkins & Assocs., LLC v. Gresham*, 79 F. Supp. 3d 625, 641 (N.D. Tex. Jan. 13, 2015) ("A non-competition covenant must bear some relation to the activities of the employee."); *Marquis*, 2020 WL 955901 at *7 (finding noncompete "likely unreasonable"

7

at preliminary injunction stage because the provision prohibited the employee from "[e]ngag[ing] in a business" similar to that of the employer's, rather than working for a competitor in a specific capacity).

The Court finds these cases instructive. Like the provisions in *Weber* and *McKissock*, the noncompete provisions in the Addendum and the Agreement restricting Michaels' post-termination relationship with Kahn and other named competitors are unreasonably broad. The restriction is not related to the activities of the employee, Michaels, and does not limit the type of work that Michaels would be prohibited from performing. *See TransPerfect*, 594 F. Supp. 2d at 755. Indeed, the language does not limit the scope of activity prohibited in *any* manner. Both the Agreement and the Addendum would prevent Michaels from "accepting any type of employment [with Kahn], even as a janitor." *Weber*, 2014 WL 12521297, at *8. Such a position would have no relation to Michaels' job duties with the Emerald City Defendants. To be sure, even Taglioli agrees: at trial, Taglioli testified that the contractual language prohibiting Michaels from working with Kahn "encompasses everything" (Trial Day 3, Plaintiffs' examination of Taglioli).

In the absence of any specificity as to the scope of Michael's post-termination employment or affiliation with Kahn, the Court finds the agreements "impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." *Marsh*, 354 S.W.3d at 777 (quoting § 15.50(a)); *see also Kenyon Int'l Emergency Servs., Inc. v. Malcolm*, No. H-09-3550, 2010 WL 452745, at *4 (S.D. Tex. Feb. 8, 2010) *aff'd*, 400 F. App'x 893 (5th Cir. 2010) (finding the noncompetition clause unenforceable "because it is too broad in all respects: it does not limit the area, the tasks, or the time that it prohibits its employees from competing with it"),

For these reasons, the Court finds that the Agreement and the Addendum are unduly broad and place a restraint on Michaels more than necessary to protect the interests of the Emerald City Defendants. Thus, they are both unenforceable as a matter of law.

## CONCLUSION

It is therefore **ORDERED** that Plaintiffs Scott Michaels and Jordan Kahn Music Company's oral Motion for Judgment as a Matter of Law on the Enforceability of the Noncompete Provisions in the Addendum and the 2018 Agreement is **GRANTED**.

It is further **ORDERED** that the Court will not submit questions or instructions to the jury in the above-styled matter pertaining to Defendants' claims for breach of contract or tortious interference with an existing contract.

**IT IS SO ORDERED**.

**SIGNED this 10th day of August, 2022.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE