# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| JORDAN KAHN MUSIC COMPANY, LLC et al., | § § § | |
| | § | Civil Action No. 4:21-cv-00045 |
| *Plaintiffs,* | § | Judge Mazzant |
| v. | § | |
| | § | |
| DEAN "DENO" TAGLIOLI et al., | § § | |
| *Defendants.* | | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court are Defendants' Opposed Motion for Bill of Costs (Dkt. #231), Plaintiffs' Bill of Costs Submission (Dkt. #232), Plaintiffs' Motion to Alter or Amend Judgment (Dkt. #234), and Plaintiffs' Motion for New Trial (Dkt. #235). Having considered the motions and relevant pleadings, the Court finds that Defendants' Opposed Motion for Bill of Costs (Dkt. #231). Plaintiffs' Bill of Costs Submission (Dkt. #232), Plaintiffs' Motion to Alter or Amend Judgment (Dkt. #234), and Plaintiffs' Motion for New Trial (Dkt. #235) should be **DENIED**.

## BACKGROUND

Defendant Deno Taglioli ("Taglioli") is the sole owner of Defendant Emerald City Band, Inc. ("ECB") and sole member of Defendant Emerald City Management, LLC ("ECM") (together with ECB, "Emerald City Entities" and collectively with Taglioli, "Defendants"). Taglioli previously worked with Plaintiffs Scott Michaels ("Michaels") and Jordan Kahn ("Kahn"), each musicians who have now cut ties with Defendants and pursued success with their own companies—Plaintiffs Scott Michaels Entertainment, LLC ("SME") and Jordan Kahn Music Company, LLC ("JKMC"), respectively.

After Kahn's 2014 departure from the Emerald City Entities, ECM brought suit ("Prior Suit") in this Court alleging several claims against Kahn, including violations of the Lanham Act (4:14-cv-358 (Dkt. #1)). Kahn countersued, alleging Lanham Act violations against Defendants, among other claims (4:14-cv-358 (Dkt. #14)). The crux of the Prior Suit involved the parties' disagreement as to who held the license for the trademark "Downtown Fever." The case proceeded to trial, but before the Court charged the jury, the parties entered into a settlement agreement ("Settlement") (4:14-cv-358 (Dkt. #210)). The Court accordingly dismissed each of the claims with prejudice on April 4, 2016 (4:14-cv-358 (Dkt. #213)).

Then in January 2021, a new dispute broke out among the parties and the current case began. This time, Michaels, SME, and JKMC filed suit against Defendants, and Kahn eventually joined as a co-plaintiff. In essence, Plaintiffs' case revolved around allegations that Defendants engaged in a series of nefarious and illegal business tactics. According to Plaintiffs, Defendants' malfeasance was rampant as they alleged that Defendants used trademarks of other competitors, committed cybersquatting, willfully infringed digital audio software for their live performances, knowingly interfered with competitors' business opportunities, and illegally operated their businesses in a single-family residence in violation of Plano, Texas city codes.

Although Plaintiffs' claims changed throughout the case, they eventually brought nine different causes of action against Defendants (Dkt. #186 at p. 3). Individually, JKMC alleged four trademark related claims, including violations of the Lanham Act, common law trademark infringement, common law unfair competition, and unjust enrichment. Michaels, meanwhile, alleged causes of action for fraud and promissory estoppel. As a tandem, JKMC and Kahn brought a claim for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). And lastly, Michaels, SME, and JKMC brought two different declaratory judgment causes of action:

one relating to the noninfringement of Defendants' copyrights and the other relating to the unenforceability of two noncompete agreements that Michaels signed with the Emerald City Entities.

On the opposing side, the Emerald City Entities put forward two counterclaims of their own—both relating to one another. In one claim, the Emerald City Entities alleged that Michaels and his business, SME, breached Michaels's noncompete agreements with the Emerald City Entities. In the other, the Emerald City Entities asserted JKMC tortiously interfered with the same agreements.

Eventually, the parties' case proceeded to a jury trial. Prior to the jury's deliberations, Plaintiffs orally moved for judgment as a matter of law on the Emerald City Entities' counterclaims, arguing that the noncompete agreements were unenforceable under Texas law (Dkt. #204). The Court granted the motion and dismissed the counterclaims (Dkt. #204); (Dkt. #222).[1] At the conclusion of the parties' cases, the Court submitted the following claims for the jury to consider: JKMC's four-trademark related claims; Michaels's fraud claim; and JKMC and Kahn's RICO claim (Dkt. #206). On all claims, Defendants prevailed with no findings of wrongdoing (Dkt. #211). The Court entered the Final Judgment that dismissed Plaintiffs' case with prejudice and denied as moot JKMC, Michaels, and SME's request for declaratory judgment regarding the enforceability of the noncompete agreements (Dkt. #222).

Subsequently, the parties submitted various post-trial motions. On September 14, 2022, JKMC, Michaels, and SME filed a motion to alter or amend the Final Judgment under Federal

---

[1] The Court's Order on Plaintiffs' motion did not specifically mention the Emerald City Entities' counterclaim against SME (Dkt. #222). However, a review of the Final Pretrial Order makes clear that the Emerald City Entities did pursue their breach of contract claim against SME. *See* (Dkt. #186). Nevertheless, the Final Judgment reflects that the claim against SME was dismissed—nothing that the Emerald City Entities' claims for breach of contract and tortious interference were dismissed (Dkt. #222).

Rule of Civil Procedure 59(e) (Dkt. #234), while Kahn and JKMC moved for a new trial under Federal Rule of Civil Procedure 59(a) (Dkt. #235). In addition to these two motions, Plaintiffs and Defendants both filed competing motions for costs under Federal Rule of Civil Procedure 54(d) and argued that they were entitled to recover litigation costs because they were prevailing parties in this case (Dkt. #231); (Dkt. #232).

## LEGAL STANDARD

### I.   Motion for New Trial

Under Rule 59(a) of the Federal Rules of Civil Procedure, a new trial can be granted to any party to a jury trial on any or all issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). However, "[u]nless justice requires otherwise, no error in admitting or excluding evidence – or any other error by the court or a party— is grounds for granting a new trial . . . At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." FED. R. CIV. P. 61.

### II.   Motion to Amend or Alter Judgment

The Fifth Circuit has observed that "[a]ny motion that draws into question the correctness of a judgment is functionally a motion under Civil Rule 59(e), whatever its label." *Harcon Barge Co. v. D&G Boat Rentals, Inc.*, 784 F.2d 665, 669–70 (5th Cir. 1986) (en banc) (citing 9 MOORE'S FEDERAL PRACTICE ¶ 204.12[1] at 4-67 (1985)). "Rule 59(e) serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence. . . . Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (internal

citations and quotations omitted). The Fifth Circuit recognizes that Rule 59(e) "favor[s] the denial of motions to alter or amend a judgment." *Southern Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993). The rule does not exist to be a vehicle for re-litigating old issues, presenting the case under new theories, obtaining a rehearing on the merits, or taking a "second bite at the apple." *Cabalcante v. United* States, No. 4:16-cv-964, 2021 WL 2894086, at *1 (E.D. Tex. July 9, 2021) (citing *Sequa Corp v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)). However, it allows a party to "question the correctness of a judgment." *Templet*, 367 F.3d at 478. The rule for reconsideration of a final judgment allows a court to alter or amend a judgment because of (1) an intervening change in controlling law, (2) the availability of new evidence not available previously, (3) the need to correct a clear error of law or fact, or (4) to prevent a manifest injustice. *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

## III.    Bill of Costs

Federal Rule of Civil Procedure 54 provides that "[u]nless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). The Court may tax the following:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

The Fifth Circuit has explained that "Rule 54(d)(1) contains a strong presumption that the prevailing party will be awarded costs." *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006) (citing *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985)). The denial of costs is considered "in the nature of a penalty," so the Court "may neither deny nor reduce a prevailing party's request for cost without first articulating some good reason for doing so." *Schwarz*, 767 F.2d at 131. "The burden is on the party seeking an award of costs to show entitlement to an award." *DietGoal sitiInnovations LLC v. Chipotle Mexican Grill, Inc*., No. 2:12-cv-00764-WCB-RSP, 2015 WL 164072, at *1 (E.D. Tex. Jan. 13, 2015).

The Court has discretion to deny costs when the "suit was brought in good faith and denial is based on at least one of the following factors: '(1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources.'" *Smith v. Chrysler Grp., L.L.C.,* 909 F.3d 744, 753 (5th Cir. 2018) (quoting *Pacheco*, 448 F.3d at 794); *see also* 10 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2668, at 234 (4th ed. 1998).

## ANALYSIS

To resolve the parties' post-trial motions, the Court will begin with Plaintiffs' motions that seek a new trial and to alter or amend the Final Judgment. Then, it will decide the competing motions for costs that were filed under Federal Rule of Civil Procedure 54(d). In the end, all pending motions are denied.

### I.    Plaintiffs' Post-Trial Motions

Here, Plaintiffs filed two different post-trial motions. In one, JKMC and Kahn argue that the Court should hold a new trial on their trademark-related claims because defense counsel

engaged in improper conduct during trial.[2] In the other, JKMC, Michaels, and SME contend that the Court must alter the Final Judgment under Federal Rule of Civil Procedure 59(e) and find in their favor on their declaratory judgment action for noninfringement of Defendants' purported copyrights. But, as discussed, both motions are denied.

### A.  JKMC and Kahn's Motion for New Trial

JKMC and Kahn move for a new trial on the basis that Defendants' counsel improperly elicited testimony that violated one of the Court's orders in limine. However, because JKMC and Kahn cannot show that they were prejudiced by counsel's actions, a new trial is unwarranted.

At trial, JKMC and Kahn alleged that Defendants were improperly using a keyword-search advertising scheme to their detriment. For example, JKMC alleged that Defendants purchased, used, and maintained JKMC's trademarks as keyword advertisements for ECB's online advertising campaigns, which diverted business to Defendants. Likewise, Kahn alleged that Defendants used his identifying information, without his authorization, in order to bolster their keyword advertising.

During opening statements, it became apparent that Defendants might proffer evidence regarding Google's position on keyword-search advertising to reinforce their claim that their actions were lawful (Dkt. #217 at p. 172) (defense counsel referring to Google AdWords database). Thereafter, Plaintiffs orally requested an order in limine to prevent any defense witness from delving into Google's policies on keyword searches, arguing that the policies were irrelevant to whether Defendants' actions were wrongful for the purposes of Plaintiffs' claims (Dkt. #218 at p. 450). The Court did not rule on the motion but instructed the parties to approach before any witness went into the topic (Dkt. #218 at p. 450).

---

[2] Kahn refers to his RICO claim as a "trademark-related claim" because he asserted that Defendants violated the Lanham Act as part of his allegation that Defendants were engaged in a pattern of racketeering activity within the meaning of the RICO statute.

As part of their case-in-chief, Defendants called Morgan Arnold ("Arnold") to testify about the Emerald City Entities' use of Google AdWords for their advertising. Prior to Arnold's testimony, Plaintiffs requested a bench conference on the issue of Arnold potentially discussing Google's search policies (Dkt. #220 at p. 1264). The Court held that any testimony regarding those policies should be inadmissible as it was both irrelevant to whether Defendants' actions were wrongful and any testimony would be prejudicial, and it warned counsel not to go into the Google policies. *See* (Dkt #220 at p. 1301). When Defendants' counsel questioned Arnold, however, he elicited testimony that ran afoul of the Court's ruling. Specifically, the exchange went as follows:

> Question: So it is—did I hear you say that it's common, in your experience, for your client to use its competitors' names as search terms?
>
> Arnold: That is correct.
>
> Question: And do you believe that there is anything inherently wrong with that?
>
> Arnold: There is nothing unethical about that at all. *There's no policy from Google against it*

(Dkt. #220 at p. 1279) (emphasis added). Immediately, the Court reprimanded Defendants' counsel and instructed the jury to disregard Arnold's comment (Dkt. #220 at p. 1279). It also reiterated that, "[w]hatever [Google's] policy is . . . it [does not] matter whether the Google policy is against it or for it, it [does not] matter, whether [Plaintiffs] proved their claims" (Dkt. #220 at p. 1280). Arnold's testimony continued, and Google's policies were never discussed again.

Still, based on Defendants' questioning of Arnold, JKMC and Kahn aver the Court must hold a new trial on their trademark-related claims because the conduct of Defendants' counsel tainted jury deliberations. The Court disagrees.

When a motion for new trial is based on defense counsel's misconduct in the form of an improper statement or question, the Court must "determine whether the remark impaired a

substantial right of the objecting party." *Winter v. Brenner Tank, Inc.*, 926 F.2d 468, 473 (5th Cir. 1991) (internal quotation marks omitted) (quoting *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 585 (5th Cir. 1985)). Put another way, a new-trial motion should be granted "where the misconduct establishes the belief that the jury was influenced by 'prejudice in reaching its verdict.'" *True Believers Ink 2, Corp. v. Russell Brands, LLC.*, No. 4:18-CV-00432, 2020 WL 2113600, at *8 (E.D. Tex. May 4, 2020) (quoting *All Freight Sys. v. James*, 115 F. App'x 182, 187 (5th Cir. 2004)). But, the Fifth Circuit has made clear that, when a new-trial motion is premised on defense counsel's improper questioning, the "questioning must be so pronounced and persistent that it permeates the entire proceeding." *Winter*, 926 F.2d at 473. Under these standards, defense counsel's conduct here was not so prejudicial to mandate a new trial.

For one, defense counsel's questioning regarding the Google policies was solely related to an isolated incident. Upon being reprimanded, the topic was never discussed again, and counsel proceeded to different questioning. The questioning was not "persistent and pronounced," and therefore, the Court cannot say that it pervaded the proceedings like JKMC and Kahn claim. *See Winter*, 926 F.2d at 473; *see also Vital v. Varco*, No. CV H-12-1357, 2015 WL 7736637, at *6 (S.D. Tex. Nov. 30, 2015) (denying new-trial motion based on allegation that defendant violated order in limine because "plaintiffs objected, the court sustained the objection, and counsel . . . proceeded to cross-examine [the witness] on a different topic"), *aff'd sub nom. Vital v. Nat'l Oilwell Varco, L.P.*, 685 F. App'x 355 (5th Cir. 2017). Moreover, the Court quickly issued a curative instruction and asked the jury to disregard Arnold's testimony—further ensuring that it would have no prejudicial effect. *See Vital*, 2015 WL 7736637, at *6; *Winter*, 926 F.2d at 473 (noting the district court immediately gave a curative instruction after improper questioning). Without more, the Court will not assume the jury disregarded its instructions. Lastly, if JKMC and

Kahn fully believed—as they do now—that Arnold's testimony was impossible to rectify, they could have moved for a mistrial. Yet, they chose not to. This point further reinforces that prejudice is lacking here. *See Winter*, 926 F.2d at 473 (finding it "significant that . . . counsel acquiesced in the court's curative instructions by failing to request a mistrial" and also noting that counsel "made a strategic determination not to request a mistrial at the time the improper comments were made"); *United States v. Diaz-Carreon*, 915 F.2d 951, 959 (5th Cir. 1990) ("[T]he failure of defense counsel to seek a mistrial suggests that any lingering prejudice from the improper comments was minimal.").

Though Arnold touched on an inappropriate subject in front of the jury, the Court does not see any clear prejudice that resulted from defense counsel's questioning. Meanwhile, JKMC and Kahn's chief arguments for why the Court should otherwise are unpersuasive. For instance, JKMC and Kahn cite two cases, *Hollybrook Cottonseed Processing, L.L.C. v. American Guarantee & Liability Insurance Co.* and *McWhorter v. City of Birmingham*, for the proposition that the timing of Arnold's testimony means that his comments were prejudicial. *See Hollybrook Cottonseed Processing*, 772 F.3d 1031, 1034 (5th Cir. 2014); *McWhorter*, 906 F.2d 674, 677 (11th Cir. 1990). In both cases, the prejudicial behavior from counsel came just before the jury deliberated, and so, JKMC and Kahn analogize Arnold's testimony to those cases because he was the last witness to testify before closing arguments. *See Hollybrook Cottonseed Processing*, 772 F.3d at 1034; *McWhorter*, 906 F.2d at 677. However, the cases JKMC and Kahn rely on are distinguishable.

In *Hollybrook Cottonseed Processing*, for example, the prejudiced party immediately moved for a mistrial based on the prejudicial comments, which did not occur here. *See Hollybrook Cottonseed Processing*, 772 F.3d at 1033–34. Additionally, the Fifth Circuit noted that there was "no discernible basis for the jury's award apparent from the evidence" on the issue of damages,

10

and thus, the court could properly grant a new trial under those circumstances. *Id.* at 1034. On the other hand, JKMC and Kahn never allege that the jury could not possibly find in Defendants' favor on their trademark-related claims, and the Court notes that there was sufficient evidence in the record for the jury to make that conclusion. *See id.* at 1034.

Likewise, *McWhorter*, although not binding on the Court, presented an entirely different situation than Arnold's testimony did. In *McWhorter*, the district court issued an order in limine that held the parties could not discuss a certain lawsuit during the case. 906 F.2d at 676. During closing arguments, however, plaintiff's counsel referenced the litigation and even drew the jury's attention to a copy of the complaint from the lawsuit, which was an exhibit in the case. *Id.* The district court was shocked by counsel's comment and sent a clerk to retrieve the exhibit from the jury room after the jury retired to deliberate. *Id.* at 676–77. The jury eventually noticed the exhibit was missing, and the district court told the jury that it was not in evidence. *Id.* at 677. Thereafter, the district court granted a new trial—expressing "concern that the jury was influenced by improper argument, particularly in light of the jury's message that it had not received [the exhibit]." *Id.* On appeal, the Eleventh Circuit affirmed the court's decision to grant a new trial. *Id.* Importantly, the court reasoned that counsel's prejudicial closing arguments likely affected the jury's verdict because the comments were "injected into the case in the rebuttal portion of . . . closing argument, immediately before the jury began to deliberate; defense counsel had no opportunity to respond to these claims; and the jury noticed that [the exhibit] was not included in [evidence when it deliberated]." *Id.* Unlike the exceptional circumstances in *McWhorter*, the jury here never received an exhibit referencing Google's policies, let alone noticed that such an exhibit was missing when it deliberated. *See id.* Furthermore, Arnold's testimony came before closing arguments, and JKMC and Kahn had plenty of opportunity to respond to Arnold's assertion either

in the form of cross-examination or closing arguments. *See id.* It is also worth noting that the defense counsel in *McWhorter* never objected to the improper arguments when they occurred, which likely precluded the district court from issuing a proper curative instruction. *See id.* As discussed previously, that certainly was not the case here. *See id.* Thus, *McWhorter* does not help JKMC and Kahn's motion.

JKMC and Kahn's other argument does not take them much further. They aver that because defense counsel used Arnold as a "pseudo expert," it is clear that his testimony was prejudicial. JKMC and Kahn have cited no case law to support this proposition, and the Court has found none where a court has found this to be sufficient for a finding of prejudice in the context of improper questioning by defense counsel. And, in any event, the Court is confident that its admonishment of defense counsel, coupled with its instruction to the jury to disregard Arnold's comment, ensured the jury would not rely on Arnold's testimony pertaining to Google's policies. Therefore, the Court finds this argument to be unpersuasive.

In short, the Court will not hold a new trial based on defense counsel's questioning in light of the fact that JKMC and Kahn cannot demonstrate prejudice here. The testimony regarding Google's policies was brief, and there is no indication that the jury disregarded the Court's instructions to ignore Arnold's comments. It cannot be said that defense counsel's conduct permeated the proceedings, and accordingly, JKMC and Kahn's motion for new trial is denied.

### B. JKMC, Michaels, and SME's Motion to Alter or Amend Judgment

Next, JKMC, Michaels, and SME argue that the Court should alter its Final Judgment under Federal Rule of Civil Procedure Rule 59(e) because the Court improperly dismissed their declaratory judgment action for noninfringement of Defendants' copyrights after trial. More specifically, they argue that the Court should now entertain their claim because the action remains ripe to decide, and Defendants never established that they owned a valid copyright. Thus, the Court

should declare Defendants have no valid copyright claim and that no copyright infringement occurred. The Court, however, denies JKMC, Michaels, and SME's requested relief.

The motion here requires an overview of the case dating back to the parties' original pleadings. After JKMC, Michaels, and SME filed their original complaint, Defendants answered and the Emerald City Entities asserted various counterclaims (Dkt. #9). Among the counterclaims was an action for copyright infringement against JKMC, Michaels, and SME (Dkt. #9 at p. 19). In response, JKMC, Michaels, and SME moved to dismiss the copyright counterclaim because Defendants never alleged that they owned a valid copyright (Dkt. #10). Furthermore, JKMC, Michaels, and SME amended their own complaint and added a claim for declaratory judgment, asking the Court to declare that Defendants have no ownership in copyrighted materials (Dkt. #12 at p. 16). The Emerald City Entities subsequently filed their amended counterclaim and removed their action for copyright infringement (Dkt. #14). Therefore, the Court denied the motion to dismiss as moot (Dkt. #17). Nevertheless, JKMC, Michaels, and SME maintained their declaratory judgment claim throughout the case. And while JKMC, Michaels, and SME never filed a pretrial motion on the claim at any point, it was still included in the Court's final pretrial order (Dkt. #186 at p. 6). At trial, however, JKMC, Michaels, and SME never moved the Court to find in their favor before the verdict returned. Indeed, it appears the only time JKMC, Michaels, and SME mentioned their declaratory judgment claim was on the second-to-last day of trial, and even then, JKMC, Michaels, and SME only argued that their declaratory judgment action was ripe to decide (Dkt. #220 at pp. 1304–07). They never moved on the claim itself.

Despite this, they ask the Court to amend the Final Judgment, which dismissed all of their claims with prejudice (including the declaratory judgment action) and declare that (1) the Emerald City Entities did not register any materials with the U.S. Copyright Office that Plaintiffs allegedly

infringed; (2) the Emerald City Entities do not own copyrights in the materials they alleged Plaintiffs infringed; (3) Plaintiffs did not and do not infringe on those materials; and (4) the Emerald City Entities' copyright infringement claim was frivolous or otherwise objectively unreasonable (Dkt. #234 at p. 4). The Court will not do so.

Generally, motions to amend the final judgment are strongly disfavored, *Templet*, 367 F.3d at 479, and the Court should consider amending a judgment in only one of four circumstances: (1) an intervening change in controlling law, (2) the availability of new evidence not available previously, (3) the need to correct a clear error of law or fact, or (4) to prevent a manifest injustice. *Schiller*, 342 F.3d at 567. The arguments raised here do not implicate the first two instances— JKMC, Michaels, and SME do not cite an intervening change in the law or the availability of new evidence. *See* (Dkt. #234). Rather, it appears they try to shoehorn their situation into the last two scenarios—the need to correct a clear error or to prevent a manifest injustice. But this effort is unconvincing.

From a procedural standpoint, JKMC, Michaels, and SME cannot use a Rule 59(e) motion "to raise arguments which could, and should, have been made before the judgment issued." *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (internal quotation marks omitted) (quoting *Fed. Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)). In that vein, "Rule 59(e) motions are aimed at *re*consideration, not initial consideration." *Harley-Davidson Motor Co., Inc. v. Bank of New England-Old Colony, N.A.*, 897 F.2d 611, 616 (1st Cir. 1990) (emphasis in original). However, JKMC, Michaels, and SME, effectively ask the Court—for the first time—to rule on their declaratory judgment claim despite having ample time and information to pursue their claim before the judgment issued. The Court will not.

Rule 59(e) is not the proper vehicle for a party to ask the Court to consider its claims for the first time when such information was available at all times prior to the judgment being entered. *See Harley-Davidson Motor Co.*, 897 F.2d at 616; *Simon*, 891 F.2d at 1159. By not effectively pursuing their declaratory judgment claim at trial, let alone previously in this case, JKMC, Michaels, and SME cannot save themselves and ask the Court to find for them on their claim through a Rule 59(e) motion.

In this context, *BP Amoco Chemical Company v. Flint Hills Resources, LLC*, 697 F. Supp. 2d 1001, 1040–41 (N.D. Ill. 2010), is instructive. In *Flint Hills Resources*, the court denied the plaintiff's Rule 59(e) motion because the plaintiff "failed to pursue its declaratory judgment claim at trial," which resulted in a waiver of its claim. *Id.* at 1041. To be sure, the *Flint Hills Resources* court also based its decision on the fact that the plaintiff did not include its claim in the pretrial order, which was not the case here, but the principle from the case still stands: "Rule 59(e) 'does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to judgment.'" *Id.* (quoting *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996)). Additionally, this motion is similar to the one facing the district court in *Capital Metropolitan Transportation Authority v. Gillig Corp.*, No. A04CA-094-SS, 2005 WL 1241876, at *2 (W.D. Tex. May 11, 2005), *aff'd*, 182 F. App'x 292 (5th Cir. 2006). There, the plaintiff filed a post-trial motion, arguing that it had "conclusively proved" its breach of contract claim and the damages stemming from it, so it requested the court to enter judgment on both issues. *Id.* at *2. Construing the motion as if were made under Rule 59(e), the court rejected the plaintiff's argument, noting that Rule 59(e) motions "cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Id.* (cleaned up) (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003)). The court reasoned that "[s]ince [plaintiff's]

argument that the evidence it adduced at trial 'conclusively proved' its entitlement to damages for breach of contract could, and should, have been raised as a [Federal Rule of Civil Procedure] 50(a) motion at trial, [plaintiff] cannot seek a modified judgment under Rule 59(e) . . . ." *Id.* Similarly, JKMC, Michaels, and SME should have moved on their declaratory judgment claim *before* the Final Judgment issued, preferably at trial in the form of a motion for judgment as a matter of law under Rule 50(a). *See id.* Therefore, the Court will not indulge their arguments here, and JKMC, Michaels, and SME's motion is denied.

## II.    Entitlement to Costs Under Federal Rule of Civil Procedure 54

Having resolved Plaintiffs' other post-trial motions, the Court must consider whether Plaintiffs or Defendants are entitled to costs in this litigation. Plaintiffs and Defendants filed competing motions under Federal Rule of Civil Procedure 54(d), with both claiming they are the prevailing party for the purposes of this case. Ultimately, the Court concludes that the parties should bear their own costs.

Here, Plaintiffs and Defendants collectively moved under Rule 54(d), arguing they are entitled to costs because they are the "prevailing party" in this case. On the one hand, Defendants argue they are entitled to costs because the jury found they were not liable on any of Plaintiffs' claims, which resulted in the claims being dismissed with prejudice. Meanwhile, Plaintiffs aver they are the true prevailing party because the Court dismissed with prejudice the Emerald City Entities' only counterclaims after the Court granted Plaintiffs' motion for judgment as a matter of law (Dkt. #204); (Dkt. #222). Accordingly, the motions turn on whether Plaintiffs or Defendants are prevailing parties pursuant to Rule 54(d).

Under Rule 54(d)(1) of the Federal Rules of Civil Procedure, litigation costs are allowed to "the prevailing party." FED. R. CIV. P. 54(d)(1). In *Hensley v. Eckerhart*, the Supreme Court held that a prevailing party must "succeed on any significant issue in litigation which achieves

some of the benefit the party sought in bringing suit." 461 U.S. 424, 433 (1983) (citation omitted).[3]
More recently, the Supreme Court set forth the requirements for earning status as a prevailing party
in *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human
Resources*, 532 U.S. 598, 604 (2001). In *Buckhannon*, the Supreme Court held that a prevailing
party "must achieve some judicially sanctioned relief that either creates or materially alters a legal
relationship between the parties." *Id*. Expounding on *Buckhannon*, the Fifth Circuit has stated that
"[a] prevailing party is 'one who has been awarded . . . at least some relief on the merits' and there
must be 'judicial *imprimatur* on the change' in the legal relationship between the parties." *Veasey
v. Abbott*, 13 F.4th 362, 368 (5th Cir. 2021) (quoting *Buckhannon*, 532 U.S. at 603, 605). When
deciding who is the prevailing party, "the case must be viewed as a whole," and a party need not
prevail on every issue in order to recover costs. *Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th
Cir. 1991).

Before reaching the merits of Plaintiffs and Defendants' arguments, the Court must address
a few problems presented by their motions. To start, insofar as Plaintiffs collectively move for
costs under Rule 54, Plaintiffs' motion fails. Plaintiffs cannot all move to recover costs when one
Plaintiff—Kahn—never prevailed on any claim in this case. Kahn's claims were dismissed with
prejudice after trial, and it was only Michaels, SME, and JKMC who defeated Defendants'
counterclaims for breach of contract and tortious interference. Clearly, Kahn cannot ride his co-
Plaintiffs' coattails to prevailing party status when he did not obtain any relief himself. *See, e.g.*,
*Veasey*, 13 F.4th at 368 (requiring a prevailing party to obtain "*at least some relief on the merits*")
(emphasis added) (cleaned up). Thus, if any Plaintiff should be awarded costs in this case, such
costs would not be taxed in Kahn's favor.

---

[3] The *Hensley* Court further noted that this standard is "generally applicable in all cases in which Congress has
authorized an award of fees to a 'prevailing party.'" *Id.* at n.7.

Even with that issue aside, however, the prevailing party inquiry is not so clear cut. One issue, for example, is that Defendants, as well as JKMC, SME, and Michaels, can earnestly claim prevailing party status. JKMC, SME, and Michaels successfully defeated the Emerald City Entities' counterclaims through their motion for judgment as a matter of law, which was a significant victory in this case. JKMC and SME are now free to work with the Emerald City Entities' former employees, and Michaels faces no liability for pursuing his own musical endeavors. Moreover, JKMC, SME, and Michaels received a favorable ruling that eviscerated the noncompete agreements that the Emerald City Entities consistently used for many of its former employees. But Defendants succeeded as well—successfully repelling Plaintiffs' claims at trial, which resulted in the jury finding that no wrongdoing occurred.[4]  Thus, the Court faces a mixed-results situation, which complicates the Court's analysis. *See Brigham & Women's Hosp., Inc. v. Perrigo Co.*, 395 F. Supp. 3d 168, 172 (D. Mass. 2019) ("[A] case of 'mixed results' is one in which *each* party prevailed on some claims or counterclaims.") (emphasis in original); *White v. Reg'l Adjustment Bureau, Inc.*, No. 3:11-CV-1817-B, 2013 WL 12175083, at *3 (N.D. Tex. June 16, 2013) (discussing mixed-results cases). But, if that were the only issue, the parties' motions would be easier to handle: the Court could simply align the parties and decide which side, if any,

---

[4] Relying on *Petteway v. Henry*, 738 F.3d 132, 137 (5th Cir. 2013), Plaintiffs vigorously argue Defendants cannot claim they are prevailing parties because their successful defense at trial did not materially alter the parties' legal relationships, nor did it change Plaintiffs' behavior. This position is untenable. The Fifth Circuit has held that a dismissal with prejudice of claims against a defendant makes the defendant a prevailing party. *Schwarz*, 767 F.2d at 130 ("Because a dismissal with prejudice is tantamount to a judgment on the merits, the defendant in this case . . . is clearly the prevailing party and should ordinarily be entitled to costs"); *Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F.2d 533, 539 (5th Cir. 1990) ("We begin by noting that the dismissal of a plaintiff's suit with prejudice is tantamount to a judgment on the merits for the defendants, thereby rendering them the prevailing parties.") (citations omitted). Similarly, where a defendant successfully repels a plaintiff's claims that results in a finding of no illegal conduct, a defendant also prevails for purposes of Rule 54(d). *See Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 713 F.2d 128, 131 (5th Cir. 1983) (naming defendant prevailing party where it "successfully repelled [plaintiff's] attempt to obtain money damages" on patent infringement claims, which included findings that "four patents were held to be noninfringed and two of the patents were found to be invalid"). Since Plaintiffs' claims were dismissed with prejudice following the jury's findings of no wrongdoing, Defendants qualify as a prevailing party here.

prevailed on the case as a whole. *See Brigham & Women's Hosp., Inc.*, 395 F. Supp. 3d at 172; *White*, 2013 WL 12175083, at *3. But that is not the only issue present.

Along with the mixed results between certain parties, this case also involves one Plaintiff, Kahn, who did not prevail on the lone claim he brought. It also features one Defendant, Taglioli, who prevailed on every claim he was involved in. However, the parties overlook this wrinkle— never discussing how the Court should account for these individuals in the context of this case. Instead, the parties collectively moved for costs rather than parsing out which Plaintiff, or which Defendant, prevailed and which costs certain Plaintiffs or Defendants are entitled to. Though Plaintiffs and Defendants argue that each respective side is collectively liable for costs, this does not account for the relative successes each side obtained. Nor do the parties consider Kahn's failure at trial or Taglioli's complete victory.

Candidly, this case is unique. For one, not only does it involve parties that won on some claims, but not others, but it also includes a scenario where those same parties succeeded against certain plaintiffs/defendants but not others. Thus, this case is of a different type than the ones that typically face district courts. *C.f. Tempest Publ'g, Inc. v. Hacienda Records & Recording Studio, Inc.*, 141 F. Supp. 3d 712, 716, 719 (S.D. Tex. 2015) (deciding entitlement to costs where plaintiff sued three different defendants on the same claims and plaintiff prevailed on only one of its four claims); *Johnson v. Big Lots Stores, Inc.*, 639 F. Supp. 2d 696, 699–700, 707 (E.D. La. 2009) (deciding entitlement to costs in Fair Labor Standards Act case involving over forty plaintiffs against one defendant and holding two successful plaintiffs could recover costs but also holding that defendant could recover costs as to other non-prevailing plaintiffs). Moreover, there still remains the fact that Kahn did not prevail whatsoever and Taglioli completely prevailed—further

removing this case from the ones district courts routinely see. Given these complexities, the question becomes how to evaluate the competing motions here.

One option is to decide prevailing party status on an individualized basis. *See Johnson*, 639 F. Supp. 2d at 707 (allowing two plaintiffs to recover costs against the defendant, but holding the defendant could recover costs against other plaintiffs whose cases were dismissed with prejudice). But that is a suboptimal choice here because the parties collectively moved for costs and did not provide a way to assign certain costs to a specific party. Consider, for example, if the Court juxtaposed Taglioli's successes against Kahn's. In that situation, Taglioli undeniably prevailed over Kahn—as Taglioli defeated Kahn's only cause of action. However, because Defendants jointly moved for costs, there is no way to determine what amount would be appropriate for Taglioli to receive. And Defendants have not suggested a possible choice in the form of a number, a percentage, or anything. The Court would either grant a windfall to Taglioli or pick an arbitrary number out of thin air with absolutely no ties to the costs Taglioli incurred. For another illustration, take the cases of SME and the Emerald City Entities. Viewing the case as a whole, SME prevailed over the Emerald City Entities. SME brought two declaratory judgment actions—one being denied as moot and the other essentially being waived at trial. But it achieved a significant victory, as discussed above, by prevailing on the Emerald City Entities' counterclaim relating to the noncompete agreements. Like Defendants, however, Plaintiffs did not provide a mechanism for the Court to assign costs to SME individually, preventing a proper award of costs. Therefore, deciding costs on an individualized basis here does not seem like an adequate solution.

Meanwhile, a "simpler option is for the parties to bear their own respective costs, and that is the better option where . . . it is impossible to disentangle and allocate the costs expended by either side as between the prevailing and non-prevailing [parties]." *Thorncreek Apartments I, LLC*

*v. Vill. of Park Forest*, 123 F. Supp. 3d 1012, 1015 (N.D. Ill. 2015). This option should apply here. The parties should bear their own respective costs because there is no way to separate the individual costs that each Plaintiff or Defendant incurred, and as a result, the Court cannot properly evaluate costs on a case-by-case basis.

The Court finds support for its decision in *All West Pet Supply Co. v. Hill's Pet Products Division*, 153 F.R.D. 667, 669 (D. Kan. 1994). In *All West Pet Supply Co.*, the plaintiff sued two defendants. *Id.* at 668. In turn, one of the defendants also asserted a counterclaim against the plaintiff. *Id.* The plaintiff prevailed as to the counterclaiming defendant, winning one of its causes of action against the defendant and defeating the relevant counterclaim. *Id.* However, the other defendant completely prevailed against the plaintiff. *Id.* Thereafter, the defendants jointly moved for costs, claiming they were the prevailing party under Rule 54(d). *Id.* Recognizing that the plaintiff had prevailed—at least in part—the district court decided that the defendants should bear their own costs. *Id.* Significantly, the court noted that, while the one defendant clearly prevailed on every claim it was involved in, "[both defendants] were jointly represented at trial, and presumably the litigation expenses were jointly incurred. It would therefore be impracticable to grant an award of costs to [one defendant] as a prevailing party, while denying costs to [the other defendant] . . . ." *Id.* at 669.

For further support, the Court also notes the decision in *Thorncreek Apartments I, LLC.* 123 F. Supp. 3d at 1014–15. In that case, three plaintiffs asserted various federal and state causes of action against multiple individuals and entities. *Id.* at 1014. While the plaintiffs won on their claims against two defendants, they also lost against nine other defendants. *Id.* At the end of the case, both plaintiffs and defendants collectively moved for costs. *Id.* at 1015. But the court denied

21

the parties' motions, reasoning that it would be "impossible to disentangle and allocate the costs expended by either side as between the prevailing and non-prevailing defendants." *Id.*

Like the aforementioned cases, the Court concludes that the parties have not offered an adequate way to determine the costs in this case. In particular, the Court notes that neither Defendants nor Plaintiffs have articulated any basis for the Court to avoid this result. For example, Defendants have not offered a method to reduce their costs or even apportion them among the Plaintiffs. The same goes for Plaintiffs as to Defendants. As such, the Court cannot weigh the relative merits of the parties' entitlement to costs. Here, the simplest approach is to order both sides to cover their own costs, particularly when it is extremely difficult to separate what costs each party incurred. *See id.*; *All West Pet Supply Co.*, 153 F.R.D. at 669.

"In exercising its discretion pursuant to Rule 54(d), the Court may 'pursue a case-by-case approach' and base its decision on the circumstances presented." *Cagle v. James St. Group*, No. CIV-07-0029-D, 2010 WL 11509188, at *3 (W.D. Okla. July 7, 2010) (quoting 10 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 2668 (3d ed. 1998)); *see also United States v. D.K.G. Appaloosas, Inc.*, 630 F. Supp. 1540, 1573 (E.D. Tex. 1986) (stating that Rule 54(d)(1) "calls for a balancing of the equities on a case[-]by[-]case basis"), *aff'd*, 829 F.2d 532 (5th Cir. 1987). Based on the circumstances here, the Court finds the parties shall bear their own costs.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Opposed Motion for Bill of Costs (Dkt. #231), Plaintiffs' Bill of Costs Submission (Dkt. #232), Plaintiffs' Motion to Alter or Amend Judgment (Dkt. #234), and Plaintiffs' Motion for New Trial (Dkt. #235) are hereby **DENIED**.

**IT IS SO ORDERED.**

22

**SIGNED this 28th day of February, 2023.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE